UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CARY E. BERGER and K.C.
CHARLES, INC., a Washington
corporation,

          Plaintiffs,

vs.

COMCAST OF PENNSYLVANIA/
WASHINGTON/ WEST VIRGINIA,
LP, a Colorado limited partnership
corporation,

          Defendant.

NO. CV-08-320-LRS

**AMENDED
MEMORANDUM OF DECISION[1]**

     A bench trial was conducted in this matter on October 3, 2011.  The following represents the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1).

**JURISDICTION**

     This action was removed to this court from Stevens County Superior Court in October 2008 pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. §1332(d).  CAFA vests federal courts with original jurisdiction over class actions in which: (1) the plaintiffs' proposed class consists of 100 or more members; (2) any member of the proposed class is a citizen of a state different from any defendant (minimal diversity); and (3) the amount in controversy is $5 million or

---

     [1] This Amended Memorandum Of Decision corrects several typographical errors.  It does not contain any substantive changes.

25

more, aggregating all claims and exclusive of interests and costs.[2]

With the consent of counsel for Plaintiff, the class claims were stricken by way of an "Order Re Motion To Dismiss" (ECF No. 18) filed July 2, 2010.  Recent authority from the Ninth Circuit Court of Appeals suggests this voluntary dismissal of the class claims did not eliminate the court's subject matter jurisdiction under the CAFA, notwithstanding the fact that minimal diversity no longer exists and there is not complete diversity as required under 28 U.S.C. § 1332(a).  *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC v. Shell Oil Company*, 602 F.3d 1087 (9th Cir.2010) (post-removal denial of class certification does not divest the court of subject matter jurisdiction under the CAFA; jurisdiction is determined at the time of removal).

**FINDINGS OF FACT**

Plaintiffs Carey E. Berger and K.C. Charles, Inc., are owners of six contiguous parcels of real property along and near Jergens Road in Stevens County, State of Washington.  Berger is K.C. Charles's sole shareholder.

Inland Power & Light Company (Inland Power) erected and owns electrical power infrastructure, including power poles capable of carrying telecommunications lines, throughout Stevens County, Washington.  Inland Power owns power poles located on the Berger/Charles property.

Defendant Comcast contracted with Reel Cable Services to install 13 aerial miles of fiber optic cable in Stevens County beginning in February 2005.  That contract included installation of cable on Inland Power's poles on the

---

[2] The court is satisfied that the "home state" exemption mandating abstention from the exercise of jurisdiction, 28 U.S.C. § 1332(d)(4), did not apply at the time of removal.

**MEMORANDUM OF DECISION   ~ 2**

Berger/Charles property.

In 1974, Inland Power obtained an easement from Plaintiffs' predecessors in interest, Hal and Marjorie Norrie.  This "Right-Of-Way Easement" granted to Inland Power "and to its successors and assigns, the right to enter upon the lands of the undersigned . . . and to construct, operate, and maintain, and to reconstruct, rephase, alter, repair and energize, under, on, and/or above the above-described lands and/or in, under or upon all streets, roads or highways abutting said lands, an electric transmission or distribution line or system."  This easement has not been recorded.

The two most easterly parcels of the Berger/Charles property (Parcel Nos. 5119900 and 5119800) are not expressly covered by the legal description contained in the 1974 easement.

Since 1974, in addition to electrical power transmission lines, there has been telecommunications (telephone) wire on the Inland Power poles crossing the Berger/Charles property.  Inland Power has consistently licensed telecommunications companies to install lines on their poles continuously since the 1974 easement.

On November 20, 2002, Inland Power and TCI American Cable Holdings, L.P., d/b/a AT&T Broadband entered into an "Agreement for Joint Use of Poles." The Agreement "covers all poles . . . in areas where both parties provide service" and allows the licensee to "use the poles for the purpose of transmission of signals."

Defendant Comcast is the successor of AT&T Broadband and maintains its licenses and contracts, including the Inland Power "Agreement for Joint Use of Poles."

Defendant's fiber optic cable occupies the same position on the Inland Power poles as the telecommunications (telephone) wire previously occupied.

Inland Power transmission lines and telecommunications (telephone) wire

**MEMORANDUM OF DECISION   ~ 3**

were installed on Plaintiffs' property prior to Plaintiffs' purchase of the property in 1989.

The telecommunications (telephone) wire on the Inland Power poles existed in the same position where Defendant's fiber optic cable is located for over six years after Plaintiffs purchased the property.

**DISCUSSION**

The scope of an express easement is a mixed question of fact and law. "What the original parties intended is a question of fact and the legal consequence of that intent is a question of law." *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). "The primary objective when determining the scope of an easement is to effectuate the intent of the parties who created it." *Wilson & Son Ranch, LLC v.Hintz*, 162 Wn.App. 297, 306, 253 P.3d 470, 475 (2011). "When there is specific, unambiguous language creating an easement, that language **may** be determinative of the permitted uses and, thus, the parties' intent as to its scope." *Id*. (Emphasis added). "If the language creating the easement is ambiguous regarding permissible uses . . . the parties' intent may be determined by certain factors outside the terms of the grant." *Id*., citing *Logan v. Brodrick*, 29 Wn.App. 796, 799-800, 631 P.2d 429 (1981). "When utilizing extrinsic evidence to determine the scope of an easement, 'we look to the intentions of the parties connected with the original creation of the easement, the nature and situation of the parties subject to the easement, and the manner in which the easement has been used and occupied.'" *Id*., quoting *Logan*, 29 Wn.App. At 799 (holding that increased use of right of way easement was foreseeable and intended by original parties and did not exceed the scope of the easement).

"The law assumes parties to an easement contemplated changes in the use of the easement that may not have existed at the time of the grant." *Logan*, 29

**MEMORANDUM OF DECISION   ~ 4**

Wn.App. at 800. "The law assumes parties to an easement contemplated a normal development under conditions which may be different from those existing at the time of the grant. [Citations omitted]. Normal changes in the manner of use and resulting needs will not, without adequate showing, constitute an unreasonable deviation from the original grant of the easement." *Id*. at 801.

In its "Order Denying Plaintiffs' Motion For Partial Summary Judgment" (ECF No. 67), filed September 8, 2011, this court found the 1974 easement ambiguous as to whether fiber optic cable is a permissible use. It was for this reason that summary judgment was denied and trial was held in order to consider extrinsic evidence. Upon further review and consideration, the court concludes the easement is not ambiguous.[3] Nevertheless, the court concludes fiber optic cable use is permissible within the terms of the easement pursuant to the principle of apportionment. While the court recognizes the Washington Supreme Court has not explicitly addressed the apportionability of easements in gross[4], the undersigned concludes the state supreme court would recognize that principle and, in fact, Washington courts have already implicitly recognized that principle by virtue of the language quoted above from the decisions of the court of appeals in *Hintz* and *Logan*.

The apportioning of an easement in gross consists in so dividing it as to produce independent uses or operations. When an easement in gross is created by

---

[3] The court retains the power to change the matters adjudicated at any time before entry of final judgment. *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995).

[4] An easement in gross is not appurtenant to any estate in land or does not belong to any person by virtue of ownership of estate in other land. It is a mere personal interest in or right to use land of another. "An easement in gross directly benefits one person, an easement appurtenant benefits a particular piece of property." *M.K.K.I., Inc. v. Krueger*, 135 Wn.App. 647, 655, 145 P.3d 411 (2006).

**MEMORANDUM OF DECISION   ~ 5**

conveyance, apportionability depends upon the intention of the parties to the conveyance.  Restatement (First) of Property §493 (1944).  The 1974 easement was for the benefit of Inland Power and its "assigns."  The easement restricts itself to an "electric transmission or distribution line or system" which, on its face, is seemingly limited to electric power poles, transformers, and electric power lines.  There is no mention of telecommunications.  In *Marcus Cable Associates, L.P. d/b/a Charter Communications v. Krohn*, 46 Tex. Sup. Ct. J. 167, 90 S.W.3d 697 (2002), the Texas Supreme Court held this language did not permit cable television lines to be strung across the plaintiffs' land.  According to the court, "[w]hile cable television may utilize electrical impulses to transmit communications . . . television transmission is not a more technologically advanced method of delivering electricity."  *Id*. at 705.  In a footnote, it observed that in recent years, many telecommunications providers, including cable-television operators, had moved toward fiber-optics cables that use light lasers, rather than electrical impulses, to transmit communications over their lines.  *Id*. at n. 2.  The lone dissenting justice opined that he would hold the easement could be apportioned or divided with the cable provider, based on the development of cable television since the easement was granted in 1939, and because the cable provider's use of the easement would not impose any greater burden on the servient estate.  *Id*. at 711-12.  The dissenting justice conceded that in 1939 when the easement was granted, the grantors were thinking about electric power and not an electric television cable signal, even though both are electric.  *Id*. at 708.  He pointed out, however, that "a use that is within the language of an easement as it has come to be understood with changes in technology is not prohibited simply because it was not part of the parties' original thinking" and therefore the question was "whether a cable carrying an electric television signal to various users is 'an electric transmission and distribution line or system.'"  *Id*.  He concluded the

**MEMORANDUM OF DECISION   ~ 6**

answer was "yes" because:

> A television cable is a "line." A television signal is "electric," assuming as the Court does, that the cable is not fiber optic **(although even if the cable were fiber optic, the signal would still start out electric at the transmitter and end up electric at the receiver)**.

*Id*. at 709 and n. 5 (emphasis added).

The dissenting justice added that the majority decision stood alone "in the nation athwart the path to providing cable television and related services to rural areas" and that it directly conflicted with the decision of the Supreme Court of Ohio in *Centel Cable Television Co. v. Cook*, 58 Ohio St.3d 8, 567 N.E.2d 1010, 1015 (1991), which held that an easement "for a line for the transmission and/or distribution of electric energy thereover, for any and all purposes for which electric energy is now, or may hereafter be used" allowed for a cable television line. *Id*. at 711. He opined that the easement in *Centel Cable* only provided expressly what the law implied in the easement before the Texas Supreme Court in *Marcus Cable*: "that 'electric transmission and distribution' includes all purposes for which electric transmissions are now or may hereafter be used, uses made possible only by subsequent technological developments." *Id*.

It is true that in 1939, cable television did not exist and so the parties to the easement in *Marcus Cable* clearly were not thinking about cable television. Cable television did exist in 1974 when the easement at bar was granted, although its availability and use was not nearly as widespread as it is today. See the National Cable & Telecommunications website at www.ncta.com regarding the history of cable television. Whether anybody had cable television in rural Stevens County in 1974 is a question for which the court does not have an answer. Plaintiffs contend that because cable television existed in 1974, the omission of any reference in the easement to telecommunications in general, and cable television specifically, means the parties intended to exclude those uses. The Norries did not testify and so no one knows whether they intended to include or exclude telecommunications

**MEMORANDUM OF DECISION    ~ 7**

in general, and cable televison specifically, or whether they even gave it any thought in 1974.  As the dissenting justice in *Marcus Cable* stated, however, what the Norries were thinking or not thinking is "not the question."  90 S.W.3d at 708.  "The scope of the easement is measured by the parties' intent as expressed in the words used, broadened by changes in the manner, frequency, and intensity of the intended use that are due to technological advances and do not unreasonably burden the servient estate."  *Id*., citing Restatement (Third) Of Property (Servitudes) §§4.1 and 4.10 & cmt. a (1998).  Washington law is in accord.  "The law assumes parties to an easement contemplated changes in the use of the easement that may not have existed at the time of the grant."  *Logan*, 29 Wn.App. at 800.  "The law assumes parties to an easement contemplated a normal development under conditions which may be different from those existing at the time of the grant.  [Citations omitted].  Normal changes in the manner of use and resulting needs will not, without adequate showing, constitute an unreasonable deviation from the original grant of the easement."  *Id*.

This court agrees with the dissenting justice in *Marcus Cable* that "electric transmission and distribution" includes all purposes for which electric transmissions are now or may hereafter be used, including uses made possible only by subsequent technological developments.  Electricity is used in transmitting television signals over a fiber optic cable in that the signal starts out electric at the transmitter and ends up electric at the receiver.  An optical transmitter converts an electrical signal into an optical signal to send into the optical fiber, a cable containing bundles of multiple optical fibers, and an optical receiver recovers the signal as an electrical signal.  This is a use within the language of the 1974 easement as it has come to be understood with changes in technology.[5]  Plaintiffs

---

[5] Inland Power has its poles on the Plaintiffs' property pursuant to the easement. Inland Power's licensing of its poles is derived from the easement.

**MEMORANDUM OF DECISION   ~ 8**

note that in September 1996, they granted to Inland Power a Right-Of-Way Easement for the installation of additional power poles and lines to provide power to the residence at 5685 Jergens Road, and that this easement, as contrasted with the 1974 easement, provided Inland Power with express authorization to "license, permit, or otherwise agree to the joint use or occupancy of the line or system by any other person, association or corporation, for electrification, telephone, television, or communication needs." (Plaintiffs' Trial Ex. 6).  The existence of this later easement does not alter the court's analysis as to the apportionability of the 1974 easement, additionally so in light of the fact that cable television and the use of fiber optic cable for telecommunication purposes had become very widespread by 1996.

The extrinsic evidence supports the court's conclusion regarding the apportionability of the 1974 easement.  Telecommunications (telephone) wire was hanging from the power poles in 1974, the same year the easement was granted, and remained hanging there until 1995 when Plaintiffs negotiated an easement to have that wire buried underground.  Cable television is a form of telecommunications.  The manner in which the easement has been used and occupied is a factor considered in determining the scope of an easement.

The stringing of the fiber optic cable on the poles does not impose a greater burden on the Plaintiffs' property (the servient estate).  The cable is strung along

---

Plaintiffs note that pursuant to the pole agreement, Inland Power, as licensor, "does not warrant or assure to Licensee any right-of-way privilege or easements." Plaintiffs also note there are other provisions requiring the licensee to obtain insurance and furnish a bond, and to indemnify Inland Power for losses and liabilities resulting from the licensee's use of the poles.  These provisions are intended to protect Inland Power, but they are not inconsistent with an understanding that Inland Power has the ability to license the use of its poles for compatible uses within the scope of the easement.  The pole agreement did not require Defendant, the licensee, to obtain its own easement.

**MEMORANDUM OF DECISION    ~ 9**

the power poles in the same location where the telecommunications (telephone) wire was previously located.[6]   Plaintiffs speculate about a greater burden, but no evidence was presented that there has actually been an additional burden (i.e., Comcast trucks being driven across Plaintiffs' land, gates left open allowing livestock to run loose, etc.).  The court has no reason to believe the servicing of Defendant's cable imposes any greater burden than the servicing of Inland Power's poles and lines already imposes.

It is acknowledged that the 1974 easement does not cover the two most easterly parcels of Plaintiffs' property (Parcel Nos. 5119900 and 5119800).  These parcels, however, were at one time owned by the Norries in common with the other parcels that are expressly subject to the 1974 easement. (Defendant's Trial Ex. 109).[7]   A prescriptive easement arises where there has been: (1) use adverse to the owner of the servient land; (2) use that is open, notorious, continuous, and uninterrupted for 10 years; and (3) knowledge of such use by the owner at a time when he was able to assert and enforce his rights.  *810 Properties v. Jump*, 141 Wn.App. 688, 700, 170 P.3d 1209 (2007).  Possession is adverse if the claimant uses the property as if it were his own, without regard for the claims of others, without asking permission, and under a claim of right.  *Id*., citing *Malnati v. Ramstead*, 50 Wn.2d 105, 108, 309 P.2d 754 (1957).  "Hostile use of real property by an occupant or user does not import ill will, but imports that the claimant is possessing or using it as owner, in contradistinction to possessing or using the real property in recognition of or subordinate to the title of the true owner."  *Id*.,

---

[6] Plaintiffs' April 1995 easement with U.S. West which provided for removal of its aerial telephone wire and burial of it underground does not constitute an abandonment of **Inland Power's** easement pursuant to which it licensed use of its poles to Defendant. (Plaintiffs' Trial Ex. 5).

[7] It appears the Norries acquired these parcels in 1976 which was subsequent to the 1974 easement.

**MEMORANDUM OF DECISION   ~ 10**

quoting *Malnati*, 50 Wn.2d at 108.

The court concludes Inland Power obtained a prescriptive easement with regard to the easterly parcels. The record establishes that its poles and power lines were on those parcels in 1974, if not earlier, and they have remained there to this day. This use has been open, notorious, continuous and uninterrupted for over 10 years. It has been adverse, not permissive, manifested by the fact that the 1974 easement does not pertain to the easterly parcels and the Norries presumably knew that when they acquired those parcels in 1976. There is no evidence that Inland Power ever asked for permission to place its poles and lines on these parcels. Inland Power exercised dominion as a true owner of an easement would.[8]

"When an easement in gross is created by prescription, the question of its apportionability is decided in light of the reasonable expectation of the parties concerned in its creation as inferred from the nature of the use by which it was created." Restatement (First) of Property §493 (1944). The nature of the use which created the prescriptive easement is an electric transmission and distribution system which includes electric power poles, transformers, and power lines. Telecommunication (telephone) wire hung from those same power poles from 1974 to 1995. Cable television is a form of telecommunication. Cable television fiber optic cable being strung on Inland Power's poles was a reasonable expectation of the parties as inferred from the use of the poles not only for electric transmission lines, but also for telecommunications (telephone) wire. Inland Power's prescriptive easement with regard to the easterly parcels is also apportionable. Pursuant to its prescriptive easement, Inland Power could and did

---

[8] Plaintiffs' April 1995 easement with U.S. West also did not abandon Inland Power's prescriptive easement.

**MEMORANDUM OF DECISION   ~ 11**

license the use of its poles on these parcels.[9]

**CONCLUSIONS OF LAW**

Inland Power has a valid easement by conveyance over four of the six parcels of Plaintiffs' property at issue (the 1974 easement), and a prescriptive easement over the other two easterly parcels (Nos. 5119900 and 5119800).

Both of these exclusive easements in gross are apportionable to allow for the stringing of fiber optic cable on Inland Power's poles located on Plaintiffs' property.[10] This is a proper independent use which has been licensed by Inland Power and does not impose a greater burden on the Plaintiffs' property (the servient estate).

The presence of Defendant's fiber optic cable on Inland Power's poles located on Plaintiffs' property does not constitute a trespass upon Plaintiffs' property.

Accordingly, the District Executive is **DIRECTED** to enter judgment for Defendant. Plaintiffs' Motion For Order Certifying Issue Of State Law To Washington Supreme Court (ECF No. 82) is **DENIED**. This file shall be **CLOSED**.

//
//
//
//

---

[9] John Francisco of Inland Power testified that Inland Power's pole agreements are not specific to any geographic area and pertain to any pole within its system.

[10] An exclusive easement in gross gives the owner the sole privilege of making the uses authorized by it. It is apportionable so long as the uses fall within the specifications of the grant. Restatement (First) of Property §493 (1944).

**MEMORANDUM OF DECISION   ~ 12**

**IT IS SO ORDERED.**  The District Court Executive is directed to provide copies of the Judgment and this Memorandum Of Decision to counsel of record.

**DATED** this __25th__ day of October, 2011.

***s/Lonny R. Suko***

_____
LONNY R. SUKO
United States District Court Judge

**MEMORANDUM OF DECISION    ~ 13**